not pursue the usual course in such cases by having the report of viewers confirmed by the court, and a judgment entered as provided for by 11th Section of the Act of February 19, 1849, P. L. 79, which is as follows—"If any damages be awarded, and the report be confirmed by the said court, judgment shall be entered thereon."

No sufficient reason has been shown for making any change in the well established practice as announced in Dorscheimer's Est., 9 Pa. Superior Ct. 422; Kimmel v. Johnson, 18 Pa. Superior Ct. 429; Wolff v. Wilson, 25 Pa. Superior Ct. 266.

The motion filed by the appellee is sustained and the appeal is quashed, at the costs of appellant.

---

## Corr, to use, *v.* Evans Colliery Co., Appellant.

*Promissory notes—Corporations—Signature of notes—Course of business.*

A promissory note signed by the treasurer of a corporation in the corporate name followed by his own name as treasurer, is a negotiable instrument where it appears that all previous notes amounting to at least twenty-five issued by the company, had been signed in the manner stated, and that this practice was known to the board of directors, and that there was no by-law relating to the method of issuing notes.

In an action upon such a note where the evidence as to the practice of the company is undisputed, the court will treat the evidence, as establishing the fact in law that the note was regular and negotiable in form and in fact.

Argued March 6, 1916. Appeal, No. 16, March T., 1916, by defendant, from judgment of C. P. Luzerne Co., June T., 1911, No. 111, on verdict for plaintiff in case of Bernard Corr, now to use of Richard Conner v. Evans Colliery Co. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit on a promissory note.

At the trial the jury returned a verdict in favor of the plaintiff for $990.08.

On a rule for a new trial STRAUSS, J., filed the following opinion:

           "Hazleton, Pa., March 1, 1910.

"Four months after date we promise to pay to the order of William H. Greenfield, Jr., & Co., one thousand dollars ($1,000.00) at Hazleton, Pa., without defalcation for value received.

        "(Signed) EVANS COLLIERY COMPANY,

          "W. E. SMITH, Treasurer."

At the instance of the payee the note was discounted by Corr before maturity.

The defendant relies upon a single reason as ground for new trial: the insufficient execution of the note. This raises the question whether the note was non-negotiable on its face. The Negotiable Instruments Act of May 16, 1901, P. L. 194, Section 1 provides that a promissory note "to be negotiable must conform to the following requirements: (1) It must be in writing and signed by the maker or drawer; (2) must contain an unconditional promise or order to pay a sum certain in money; (3) must be payable on demand or at a fixed determinal future time; and (4) must be payable to order or to bearer."

This note in form complies with these requirements. In fact the signature, "Evans Colliery Company by W. E. Smith, Treasurer," is disputed on the purely legal ground that (Daniel on Negotiable Instruments, 6th Ed., page 500) "the treasurer of a corporation may not by virtue of his office execute a promissory note on behalf of the corporation." But on the same page and in direct connection with the above statement it is said:

"The treasurer of the corporation is not such an officer as is vested with implied power to make a negotiable

paper in its name, though particular circumstances might exist which would create such an implied power."

Daniel in a note refers to Torrey v. Dustin, 5 Allen 327, and Henderson Mercantile Co. v. First National Bank, 100 Tex. 344 (99 S. W. 850). Examination of the former case reveals that: "If the power of the treasurer of the association incorporated......is expressly limited in the by-laws to the payment of such bills as have been approved by the directors in a particular form, he cannot bind the corporation by a negotiable promissory note," etc.

And in the latter case there was no evidence whatever of any by-law or practice justifying the execution of a note by the vice-president and treasurer, it was said: "But like any other officer or agent of the corporation he may act as its agent under special authority express or implied, from the fact of being held out as agent, although not acting as president or vice-president, and when so acting his acts bind the corporation like those of any other agent."

The defendant also referred to other sections of Daniel, and to other cases; but in practically all of these, there is admission that authority may arise from the practice of the corporation in the general conduct of its business whereby the particular officer has been permitted to exercise this power and the notes or other instruments issued by him, have in the ordinary course of business been recognized and provided for.

Thus Elwell v. Puget Sound Co., 35 Pac. Rep. 376; "Whatever else the general agent of an industrial corporation may do to bind his principal by contracts made, by virtue of his implied authority, when it comes to uttering negotiable paper, to which in the hands of innocent holders there can be practically no defense, a strict rule applies. The agent must either have express general authority to issue such paper, or express authority to issue the particular paper, or there must be implied general authority arising from such exercise

by the agent followed by ratification as to constitute a custom of the corporation (Duggan v. Boom Co., 34 Pac. 157) ; or there must be ratification of the particular act or authority."

Planters, Etc., Bank v. Erwin, 31 Ga. 371, is only to the effect that where the charter of the corporation authorizes the issue of bank notes provided the same be signed by the president and countersigned by the cashier, those signed by the vice-president and countersigned by the assistant cashier, there being the regular president and cashier in office at the time, are not binding on the corporation.

And Wickersham Banking Co. v. Nicholas, 62 Pac. 1124, goes no further than to declare that a corporation which never discounted notes and which had not authorized its agent to discount its paper and which, until the notes endorsed in its name by the agent were presented to it for payment, had no knowledge of the making and discounting, was not stopped to deny the agent's authority to make the endorsement where it received the money realized from the discounting under the belief that it represented a cash sale made by its agents.

And Pelton v. Spider Lake, Etc., Co., 132 Wis. 219, 122 Am. St. Rep. 963, cited by Daniel at p. 500, follows the decision that persons taking accommodation paper with knowledge that its endorsement is by the treasurer of the corporation, and that he assumes to use its name and credit in his private affairs, are put upon inquiry as to his authority and they cannot hold the corporation if inquiry would have disclosed that the company had no legal connection with the transaction.

Coming now to citations from our own reports in First Natl. Bank of Bangor v. The Slate Company, 229 Pa. 27, the principle is stated:

"It is true that 'the treasurer of a corporation has no power merely by virtue of his office as treasurer to contract for a corporation; but if the treasurer has been accustomed to make certain contracts for the corporation,

60 CORR, to use, *v.* EVANS COLLIERY CO., Appellant.

and the corporation has acquiesced in them, it is bound by a new contract of that kind entered into by him. It is for the jury to decide whether such a custom exists. A treasurer has no power to endorse the company's note for discount or sale, but if allowed to do so for a long time such endorsements are legal: 3 Cook on Corporations, 6th Ed. 717. The court below found in these cases that the defendant company had for a long time allowed its treasurer to endorse notes for it. In the recent case of First National Bank v. The Colonial Hotel Co., 226 Pa. 292, our Brother MESTREZAT cites with approval this extract from 2d Thompson on Corporations, Section 1564: 'If the directors of a corporation acquiesced in the acts of its treasurer in executing or endorsing commercial paper while holding himself out to the public as having authority to do so, they thereby constitute him the general agent of the corporation to make such endorsement.' There was evidence in the present case that the plaintiff bank had previously discounted many notes signed or endorsed only by the president of the corporation in the same manner as the notes in suit and those of which they were renewals had been endorsed. It further appears that the notes so endorsed were paid by the defendant without objection as they came due."

Millward Cliff Cracker Co.'s Est., 161 Pa. 157, is strongly relied on by the defendant. In that case, however, the corporation had a by-law which provided that the treasurer shall be the only authorized person to sign checks and obligations for the corporation and no check or obligation signed by him will be good unless countersigned by the president. The note in suit was not so countersigned and was discounted by the president of a bank who knew that it had been executed in fraud of the maker, for which reason it was held that the bank was estopped from asserting that the note was issued in the exercise of authority in the treasurer to issue notes because of the long continued use of similar notes which the corporation had duly honored without

objection. It was reported by the auditor whose judg-
ment was affirmed both in the court below and in the
Supreme Court that:

"It is claimed that such practice (making notes with-
out the counter-signature of the president) amounted
to the abrogation of the by-law and vested the treasurer
with apparent authority to issue notes and give obli-
gations equivalent at law to real authority......It is
said by the claimant that even had they made inquiry
they would have been told by these fraudulent agents
that this was the customary way in which this corpo-
ration issued its notes; and would have received a
similar reply from those with whom it had previous deal-
ings; that might or might not have been the result. If
inquiry had been made the truth might have come out."

The Supreme Court affirmed the case per curiam
thus: "We think the learned auditor in the court below
has correctly pointed out the distinction between the
cases in which corporate liability is held, and those in
which it is denied in this class of causes. He held that
where the corporation received the benefits of the un-
authorized action of its officers it was bound; also that
where a previous course of dealing of the same irregular
character had been carried on, a liability arose notwith-
standing the unlawful character of the paper, but that
where there was no such previous course of dealing no
liability arose as to the particular paper in question.
And he held that......fraud of its (the maker's) presi-
dent in contriving and negotiating the fraudulent paper
for his own personal use was with the knowledge of the
bank, imputed it is true, but correctly imputed."

The sum and substance of all the cases therefore is
that where no by-law exists but a practice of the cor-
poration has grown, notes issued in accordance with
that practice are regular. Where a by-law exists and a
course of dealing has been practiced inconsistent there-
with, it is not so clear that the course of practice would

prevail over the by-law.  We are inclined to the opinion
that it would not.

Coming now to the case at bar:  The plaintiff as part
of his evidence in chief called Smith, the treasurer, for
cross-examination, and by him proved that he had been
treasurer for three years prior to March 1, 1910; that
at least twenty-five notes, in fact all the notes issued by
the company were in this form; that there were no by-
laws regulating the matter; that all these notes were
either paid out of the company's funds or renewed, and
that on February 16, 1910, there was submitted to the
board of directors a balance sheet as of October 31, 1909,
which showed twenty-one notes outstanding, amounting
to $22,468.00, maturing between November 5, 1909, and
April 15, 1910, all of which were executed in this same
form and that the minutes of February 16, 1910, showing
the submission of this balance sheet, were read at a meet-
ing of the directors on April 27, 1910, and were then ap-
proved.

On this evidence we were of the opinion that it was
clearly established, by evidence equivalent to defendant's
own admissions and not disputed, that the defendant by
practice known to the board of directors had adopted
this form of executing notes, and that therefore this note
was a negotiable instrument issued by the treasurer with
implied authority to make it, and that in the hands of
an innocent holder for value it was not subject to de-
fences that might exist between the maker and the payee
of which the holder had no notice prior to the negotia-
tion of it.

In the light of the foregoing authorities we adhere to
that opinion.  Had Carr who discounted the note in-
quired concerning the authority of the treasurer, he
would have learned that there was no by-law regulating
the matter; that every note issued by this company at
any time had been executed by the treasurer without
other counter-signature, and that all matured notes had
either been paid or renewed; that after the date of this

note the directors had approved minutes of a meeting held before that date in which reference was made to a balance sheet containing information concerning twenty-one notes (all in this form) then outstanding amounting to more than $22,000.00.

Only one consideration caused us hesitation in arriving at a conclusion as to the correctness of the trial: Ought this evidence to have been submitted to the jury, or did we rightly decide the question as a matter of law. It has been held more than once that where the facts are undisputed, their legal effect is within the province of the court.

"If the evidence is direct, certain, presenting no question of credibility and leaving no sufficient ground for inconsistent inferences of fact, the court may be asked to instruct the jury as to its legal effect": Corcoran v. Life Ins. Co., 183 Pa. 413; Elliott v. Wanamaker, 155 Pa. 67.

"If the facts are not in dispute it is a question of law for the court, but if the evidence is conflicting the question must be determined by a jury": Dannemiller v. Kirkpatrick, 201 Pa. 218; Peniston v. Huber Co., 196 Pa. 580.

Here the evidence was not obtained from a witness adverse to the defendant but from its own officer, and it covered many, in fact every note transacted. This testimony from the defendant's officer, obtained under cross-examination, is to be taken as the admission of the defendant. Concerning its truth there can be no question. Uncontradicted, the jury could not refuse its credibility, and therefore the court was bound to treat it as establishing the fact that this practice of the corporation was unbroken and recognized by the board of directors.

Upon exactly the same evidence a jury in this county had recently found a verdict against this same defendant upon another similar note: Wayne Trust Co. v. Evans Colliery Co., 17 Luz. Leg. Reg. 453. In our opinion it would be little short of travesty to accept verdicts from various juries in opposite directions upon this same

64  CORR, to use, *v.* EVANS COLLIERY CO., Appellant.

Opinion of Court below—Opinion of the Court. [63 Pa. Superior Ct.

evidence.  The fact being indisputable and indubitable it became the duty of the court to declare that the note was regular and negotiable in form and in fact.

Other matters raised at the trial, chiefly relating to admission of evidence for the defense, have not been presented for consideration on this application and may be presumed to have been abandoned.

Now, April 3, 1915, the rule for new trial is discharged and judgment on the verdict is directed.

*Error assigned* was in refusing binding instructions for defendant.

*Q. A. Gates,* for appellant.

*J. H. Bigelow,* with him *C. W. Kline* and *J. P. Fogarty,* for appellee.

PER CURIAM, April 17, 1916:

For the reasons given in the opinion filed by Judge STRAUSS, in discharging a rule for a new trial, the judgment is affirmed.

---

## Luzerne County Gas & Electric Co., Appellant, *v.* Morgan.

*Taxation—Public service corporation—Real estate not necessary for business—Gas and electric company.*

Where a public service corporation chartered to supply gas and electricity to a borough uses the ground floor of a building owned by it and otherwise occupied by its offices, for the sale of gas and electric appliances to its customers and public generally, and it appears that such articles are for sale by other dealers in the borough, the company will be liable for the taxes on the building, inasmuch as the sale of such articles is not indispensably necessary to the operation of the incorporated business.  In such a case where the